# IN THE UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

IN RE:

PAMELA CAMPBELL and
ROBERT J. CAMPBELL,   Case No. 06-00153-TOM-13

    Debtors.

---

PAMELA CAMPBELL and
ROBERT J. CAMPBELL,

    Plaintiffs,

v.   AP No. 06-00163

CAPITAL ONE AUTO FINANCE, INC.
a corporation,

    Defendant.

## MEMORANDUM OPINION AND ORDER

This adversary proceeding is before the Court on the Motion to Dismiss filed by Defendant Capital One Auto Finance, Inc. ("Capital One") (AP Doc. 15) and the Response to said Motion filed by Pamela and Robert Campbell (the "Plaintiffs" or "Debtors") (AP Doc. 18). The Court has jurisdiction pursuant to 28 U.S.C. §§ 151, 157(a) and 1334. This is a core proceeding as defined in 28 U.S.C. § 157(b)(2). The Court has considered the pleadings and the law and finds and concludes as follows.[1]

---

[1] This Memorandum Opinion constitutes findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52, applicable to adversary proceedings in bankruptcy pursuant to Federal Rule of Bankruptcy Procedure 7052.

## FINDINGS OF FACT

On November 19, 2004 the Debtors purchased a vehicle from Adamson Ford. The Debtors signed a Retail Installment Contract and Security Agreement (the "Contract") with Adamson Ford to finance the purchase of the vehicle. The Contract contains a "Credit Insurance" section that provides:

> CREDIT INSURANCE: Credit Life, credit disability (accident and health), and any other insurance coverage quoted below, are not required to obtain credit and we will not provide them unless you sign and agree to pay the additional premium. If you want such insurance, we will obtain it for you (if you qualify for coverage). We are quoting below ONLY the coverage you have chosen to purchase.

The premium amount and term in the sections designated "Credit Life" and "Credit Disability," were marked "N/A." The Contract further provided that the agreement would be assigned to Capital One and in fact was assigned to Capital One.

On that same day, the Debtors signed a GAP Asset Protection-Application for Insurance form ("GAP Application") in which they agreed to purchase Guaranteed Automobile Protection Insurance ("GAP insurance"). The GAP Application contained the following language:

> I (Applicant) understand that the purchase of GAP Asset Protection is not required nor is it a condition of the extension of credit. I understand that GAP asset protection will not be provided unless I (Applicant) sign below and agree to pay the GAP Asset Protection price set by the Dealer/Lender/Lessor as identified above.

The Debtors also signed a GAP Asset Protection Certificate of Insurance Declarations form ("GAP Certificate"). The GAP Application and GAP Certificate each showed $255.00 as the cost of GAP asset protection. The Contract listed a processing fee to American Security for GAP insurance of $255.00. This fee was not included as part of the finance charge. American Security Insurance Company was listed at the top of both the GAP Application and GAP Certificate. The GAP

2

Application and GAP Certificate were provided to the Debtors by Adamson Ford and signed by an Adamson Ford representative.

On January 16, 2006 the Debtors filed a Chapter 13 bankruptcy petition. Capital One was listed as a creditor in the schedules. In their Chapter 13 plan (BK Doc. 2) the Debtors proposed to pay Capital One as a secured creditor for the 2004 Ford Taurus, and the plan was confirmed on April 11, 2006 (BK Doc. 24).

On September 12, 2006 the Debtors filed this adversary pleading claiming that Adamson Ford and/or Capital One failed to make proper disclosures regarding the GAP insurance policy and premiums under the Federal Truth in Lending Act (TILA), 15 U.S.C. § 1601 et seq. and Regulation Z, 12 C.F.R. § 226.[2]

## CONCLUSIONS OF LAW

The purpose of TILA is to "assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and to avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices." 15 U.S.C. § 1601(a); Jones v. General Motors Acceptance Corp. et al. (In re Jones), 2007 WL 1725593 *4 (Bankr. N.D. Ala.), *aff'd*, 2008 WL 2191780 (11th Cir. May 28, 2008) (not intended for publication). "When a creditor sells credit property insurance in connection with a credit transaction, TILA requires the creditor to make certain disclosures to buyers before they become obligated on a [Retail Installment Service Contract] in which the creditor has excluded the charge for such insurance from the finance charge and included it in the amount financed." Bragg v. Bill Heard Chevrolet Inc. et al., 374 F.3d 1060, 1065 (11th Cir. 2004). Specifically, TILA

---

[2] The Court notes that Adamson Ford was not named as a Defendant in this Adversary Proceeding.

3

requires the following:

> Charges or premiums for insurance, written in connection with any consumer credit transaction, against loss of or damage to property or against liability arising out of the ownership or use of property, shall be included in the finance charge unless a clear and specific statement in writing is furnished by the creditor to the person to whom the credit is extended, setting forth the cost of the insurance if obtained from or through the creditor, and stating that the person to whom the credit is extended may choose the person through which the insurance is to be obtained.

15 U.S.C. § 1605(c).

Regulation Z, issued by the Federal Reserve Board in support of TILA, further addresses situations where voluntary debt cancellation fees may be excluded from the finance charge and provides:

> Charges or premiums paid for debt cancellation coverage of the type specified in paragraph (d)(3)(ii) of this section may be excluded from the finance charge, whether or not the coverage is insurance, if the following conditions are met:
> (A) The debt cancellation agreement or coverage is not required by the creditor, and this fact is disclosed in writing;
> (B) The fee or premium for the initial term of coverage is disclosed. If the term of coverage is less than the term of the credit transaction, the term of coverage also shall be disclosed. The fee or premium may be disclosed on a unit-cost basis only in open-end credit transactions, closed-end credit transactions by mail or telephone under § 226.17(g), and certain closed-end credit transactions involving a debt cancellation agreement that limits the total amount of indebtedness subject to coverage;
> (C) The consumer signs or initials an affirmative written request for coverage after receiving the disclosures specified in this paragraph. Any consumer in the transaction may sign or initial the request.

12 C.F.R. § 226.4 (d)(3)(i).

The Debtors argue in their complaint that the Defendant failed to meet the conditions set forth in Regulation Z, § 226.4(d)(1)(i-iii). However, the appropriate section of Regulation Z dealing with GAP insurance is § 226.4(d)(3)(i). In re Jones, 2007 WL 1725593 *4, fn 11. Section 226.4(d)(1) addresses voluntary credit insurance premiums "for credit life, accident, health or loss-

4

of-income insurance." Section 226.4(d)(3) addresses voluntary debt cancellation fees "paid for debt cancellation coverage that provides for cancellation of all or part of the debtor's liability for amounts exceeding the value of the collateral securing the obligation, or in the event of the loss of life, health, or income or in case of accident." GAP insurance is the kind of debt cancellation coverage described in 12 C.F.R. §226.4(d)(3)(ii). Therefore, in order for the fees for GAP insurance to be excluded from the finance charge, the Defendant must meet the conditions set out in §226.4(d)(3)(i).

## I. ADEQUATE DISCLOSURES MADE TO DEBTORS

First, the Defendant has shown that GAP coverage was not required in order to obtain credit and that fact was disclosed to the Debtors in writing. The GAP Application provided, "I (Applicant) understand that the purchase of GAP Asset Protection is not required nor is it a condition of the extension of credit." Second, the Defendant has shown that the fee or premium for the initial term of coverage was disclosed to the Debtors. The Contract, GAP Application, and GAP Certificate all list a fee of $255.00 to be paid to American Security for GAP insurance. Third, the Debtors signed the GAP Application and GAP Certificate requesting GAP insurance coverage from American Security.

## II. DISCLOSURES MADE WERE CLEAR AND CONSPICUOUS

In addition to determining whether the disclosures required under §226.4(d)(3)(i) were made, this court must determine if they were clear and conspicuous, as required by §226.17(a)(1). The standard for determining clarity and conspicuousness is the objective, reasonable person standard. In re Jones, 2007 WL 1725593 *6. In this case, the language "I (Applicant) understand that the purchase of GAP Asset Protection is not required nor is it a condition of the extension of credit" is located in the section above the signatures of the single page GAP Application. It is not buried in

5

tiny print and is located in a place where the objective, reasonable person would see it, read it, and understand it to mean that purchasing GAP insurance is not required to obtain credit. The cost of the GAP insurance was likewise clearly and conspicuously made so that an objective, reasonable person would have seen it and understood that the cost was $255.00.

Section 226.17(a)(1) further provides, [t]he disclosures shall be grouped together, shall be segregated from everything else, and shall not contain any information not directly related to the disclosures required under § 226.18." The Debtors admit that the disclosures do not have to be contained in the Contract but argue that because disclosures must be grouped together, they must be together on the same page. In this case, all the necessary disclosures are contained in one document: the GAP Application, and this Court can find no requirement that it be in the contract. Thus, the disclosures were sufficient.

**III.    THE PARTY REQUIRED TO GIVE THE DISCLOSURES**

The Debtors argue that the language contained in the GAP Application fails to meet the TILA requirements because it listed Capital One Auto Finance, Inc. as the lender and Adamson Ford as the dealer. As noted by the Eleventh Circuit, "[t]he primary purpose of TILA is disclosure." In re Jones, 2008 WL 2191780 *1 (11th Cir. May 28, 2008). TILA and Regulation Z require that the creditor make the disclosures clearly and conspicuously. The purpose is so that an objective, reasonable person can readily identify and understand the disclosures.

The Debtors argue that listing Adamson Ford as the seller on the Contract and then listing Capital One as the lender on the Gap Application is a contradiction and results in a confusing disclosure. The Debtors also argue that the disclosures must be made by one creditor and that a typical borrower would be confused as to who was to make the the disclosures. TILA defines

6

"creditor" as follows:

> The term "creditor" refers only to a person who both (1) regularly extends, whether in connection with loans, sales of property or services, or otherwise, consumer credit which is payable by agreement in more than four installments or for which the payment of charge is or may be required, and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness.

15 U.S.C.A. § 1602(f)[3].

Adamson Ford is an automobile dealer engaged in the regular business of selling automobiles to consumers on a credit sales basis. Adamson Ford is the entity to whom the debt arising from the consumer credit transaction was initially payable on the face of the Contract. See In re Jones, 2007 WL 1725593 *10 (the court found that Bill Smith, as the dealer and person to whom the debt was initially payable, was the creditor as defined by TILA and Regulation Z). Therefore, the Court finds that Adamson Ford is a creditor as defined by TILA and was the proper party to give the required disclosures to the Debtors. The Court finds that Adamson Ford made all of the necessary disclosures to the Debtors and the inclusion of Capital One on the GAP Application was not confusing and did not make the disclosures unclear or inconspicuous to an objective, reasonable person. Further, Capital One was the assignee of the Contract, as evidenced by the Contract, and was therefore properly listed as the lender on the GAP Application and Certificate. However, Capital One was not the party required to give the appropriate disclosures; Adamson Ford was the seller and the party required to give said disclosures, which Adamson Ford did.

---

[3] The provision found in Regulation Z which similarly defines the term creditor is 12 C.F.R. 226.2(17).

Case 06-00163-TOM    Doc 69    Filed 12/19/08    Entered 12/19/08 12:30:30    Desc Main
Document      Page 7 of 8

## CONCLUSION

The GAP Application, which was provided to the Debtors by Adamson Ford, satisfied all of the requirements necessary to have the GAP insurance costs excluded from the finance charge. The GAP Application clearly and conspicuously provided that GAP insurance was not required to obtain credit. It clearly and conspicuously stated the fee for the coverage, and it was signed by the Debtors requesting GAP insurance. Therefore, the exclusion of the GAP fee from the finance charge was proper under TILA and Regulation Z. The Motion to Dismiss filed by Capital One is GRANTED. This adversary proceeding shall be and hereby is DISMISSED with prejudice and shall be closed.

Dated this the 19th day of December, 2008.

/s/ Tamara O. Mitchell
United States Bankruptcy Judge

8